UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 8:10-Cr-402-T-35TBM

DIEGO RODOLFO BAEZ-BAEZ
_____/

**SENTENCING MEMORANDUM**

COMES NOW, the Defendant, DIEGO RODOLFO BAEZ-BAEZ, by and through his undersigned counsel and pursuant to 18 U.S.C. §3553(a) files this Sentencing Memorandum.

**Legal Analysis**

As the court is well aware from the hundreds of sentencing hearings this Court has conducted, the court shall impose a sentence that is "sufficient but not greater than necessary," free from the old mandatory nature of the Federal Sentencing Guidelines, and with "wide discretion" that will not be disturbed absent an abuse of discretion. *Gall v. United States*, 522 U.S. 38 (2007); *Kimbrough v. United States*, 522 U.S. 85 (2007). It is widely recognized that courts are free to depart from the Guidelines so long as the court states sufficient justification for the extent of the departure. See *United States v. Irey*, 563 F.3d 1223 (11th Cir. 2009)(affirming variance from level life to 210 months in "utterly gruesome" case recognizing that sentencing is the most difficult job a district judge performs); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007)(affirming variance from 151 to 188 months to 84 months in child porn case); *United States v. Clay*, 483 F.3d 739 (11th Cir. 2007)(affirming 60 month sentence even though the Guidelines were 188 to 235 months based on post-offense rehabilitation).

In *Pepper v. United States* 131 S.Ct. 1229 (2001), the United States Supreme Court emphasized the need for individualized sentencing, and then in *United States v. Booker*, 543 U.S. 220 (2005), clearly stated that the factors set forth in 18 U.S.C. §3553(a) must be considered in fashioning the appropriate sentence. Some of these factors include the history and characteristics of the defendant and the need to avoid unwarranted sentence disparities. *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007).

## History and Characteristics of Diego Rodolfo Baez-Baez

Diego Rodolfo Baez-Baez is a 42-year-old native of a very small, extremely poor town in the mountains of Colombia called Sativanorte. Sativanorte is approximately 200 miles northwest of Bogota.

Diego has always been very close to his father, so when Diego's father was kidnapped by FARC guerillas in 2001, Diego returned to Sativanorte to tend to his father's small parcel of land and begin to raise the money necessary to free his father. Diego's uncle and a cousin had already been killed by the FARC, so Diego became very motivated to become successful at ranching. Soon, he was able to raise the money necessary to pay FARC for the release of his father and not soon after that, Diego became the most successful rancher and farmer in his province. In 2009, the scenario was repeated again, and his father was freed after another three days in captivity.

After becoming successful as a rancher and farmer, there is no question that Diego used some of these funds to become involved in funding and then coordinating the shipment of kilos of cocaine from Colombia to the United States. Diego accepts full responsibility for his drug trafficking, but at the same time, Diego is not morally bankrupt. The purpose of this sentencing

memorandum is to show to the Court that despite Diego's illegal trafficking, he did use some of his illegally gained money for helping the unfortunate and needy in many ways.

Some criminals are morally bankrupt and give no second thought to committing violent or financial crimes. The undersigned would like to offer a short explanation as to why Diego, a man raised with morals, kindness, and ethics and who knows the difference between right and wrong could become involved in the drug trafficking business. There is no question that drug trafficking became a very lucrative business for Diego and by living in Colombia and most of the time not actually seeing the cocaine, it became much easier to be involved in an illegal business he knew was wrong. In Colombia, he was able to distance himself from the realities of the drug trafficking business. At times, the drug trafficking became only as real as numbers on paper and obviously the money in the bank. Deals were arranged in meetings or by phone calls to purchase kilos of cocaine that he would never see and that others would transport and move. Calls were made to arrange shipments that would happen hundreds of miles away. Other people were hired to purchase go-fast boats, crews, supplies, etc. By not leaving Colombia and hiring people to handle the logistics, it became almost easy to avoid facing the destruction, damage and evils that came with the cocaine trafficking business. It became possible to never see what it did to the end users and addicts, the increase in crime it contributed to in the United States, the death it brought to those involved in the business and those fighting it, and in general, the overall costs to society.

So, the undersigned is not suggesting Diego is not responsible for his drug trafficking; rather, the undersigned is suggesting that with the illegal funds from the drug trafficking, Diego was able to help a lot of people and make life much better for many. As proof, the undersigned has several letters and a video to play for the court as examples of his generous help he has given to others.

## Helping others

Despite his drug trafficking, Diego has learned that his good fortune could be used to help others. In his province, in the town of Sativanorte, before Diego moved back in 2001, the town was so small and economically disadvantaged that the education "system" consisted of one teacher for the whole town and children were only being educated until grade 6. Schools lacked uniforms, books, sports equipment, and sometimes could not provide a hot lunch. The elderly were unable to care for themselves and often times their families were unable as well. Many families lacked medical care and basic necessities like food and shelter. The local church was in need of repair, and often times the roads were simply unable to be traveled upon. Sativanorte is so isolated that to reach the town one must travel poorly paved roads up into the mountains, and there is only one bus per day that arrives from Bogota.

Since 2001, Diego has made extraordinary efforts to increase the quality of the education and school experience for the people of Sativanorte. He has given vast financial support for all of the activities at the school including the donation of uniforms, books, computers, and especially meals and food for lunch. Many of the children attend school for no reason other than it provides them with a solid hot meal. Because the town is very religious, the arrival of the Christmas season brings great importance, and being so impoverished, there is very little that parents can provide for their children by way of gifts. Diego has made sure that the impoverished have Christmas dinner and gifts for their children.

Diego has also gone out of his way to assist the elderly of Sativanorte. In a town without sophisticated medical and geriatric care, he has donated money for the creation of a geriatric home in Sativanorte. This endowment has included providing indispensable goods and services

for the elderly. These include wheelchairs, badly needed medicine, beds, linens, and other medical devices as well as other indispensable elements for the operation and humanitarian care.

In addition, his donations to what the locals consider the most important institution in Sativanorte, the local church, has been nothing short of miraculous to them. The church in the town was crumbling. Thanks to Diego's financial donations, the church has been saved. His donations helped to reinforce the crumbling building and bring it back to its original state. He purchased and donated various religious artifacts and artwork which helped bring the local church back to its former glory.

One of the most difficult times for the people of Sativanorte is after the death of a loved one. Being impoverished makes a proper funeral well out of their financial reach. Diego made it one of his primary goals to help these impoverished families with the funeral expenses for their loved ones. This included the transfer of corpses, purchase of caskets, purchase of burial plots and vaults, and the religious services associated with the funerals.

For many years, Diego has assisted the people of the town of Sativanorte without asking for anything in return. He is known for his unselfish assistance to those in need. The petition of support signed by hundreds of citizens of Sativanorte, along with the other letters of support, demonstrate his generosity. Attached as <u>Exhibit A</u> is a petition of support signed by over 400 of the citizens of Sativanorte listing some of the good deeds Diego has done for the town over the last 10 years. Some of these listed are:

- Supplies and provisions for "Our Lady of the Rosary" Institute;
- Sports uniforms for the school;
- Beds, linens, blankets, televisions, washers, refrigerators, clothing, food, supplies, etc., for the elderly at the elder Wellness Center of Sativanorte;

- Funeral aid;

- Christmas groceries, food, and gifts for the poor;

- Economic support for the roads. (See Exhibit A).

Additionally, and attached as Exhibit B, the undersigned has enclosed over 40 letters from individual citizens expressing the good deeds that Diego has done for them and the town. Some of the good deeds include:

- Paying for the education of children;

- Financial and food contributions for students at the Forrest Foundation;

- Paying the tuition for a student to attend the Raul Oliveria school;

- Donating over 300 gifts and food packages for children victims of the Colombian FARC violence;

- Helping a mother who lost her job;

- Donating groceries, medication and providing jobs;

- Training farmers and ranchers in the care of and breeding of pigs, goats, horses, and cattle;

- Musical instruments for the Technical Education Institute "Nuestra Senora del Rosario;"

- Supporting the Friends of Imago since 2008;

- Helping fix vehicles for people who cannot afford to do it themselves;

- Helping pay for medical expenses for a cancer patient at Bogota Cancer Treatment Center;

- Financially helping the disabled;

- Financially helping the handicapped;

- Financially helping the medically ill;

- Providing economic assistance for university education for the poor. (See Exhibit B).

Lastly, for Diego, his love of cattle (passed on to him from his father) became a passion. As an expert in the cattle business in Colombia, he has been given prestigious awards for having superior breed cattle; but it is not that he became celebrated as a cattleman that is worthy of note. Clearly, his illegitimate cocaine business allowed his cattle ranching to flourish. What is of note is that with that business he has spent considerable time sharing his knowledge and financially contributing to the less fortunate ranchers and cattleman. Unselfishly sharing his knowledge has helped the small ranchers in his province improve their livestock. Many times he would breed for free or sell genetically superior cattle to poor ranchers well below market price in order to help them breed better cattle.

## CONCLUSION

The undersigned will move at sentencing to ask the court to grant a variance to the Defendant's sentence by taking into account Diego's vast history and characteristics in providing massive economic, educational, religious and health improvements to the citizens and community of Sativanorte.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the original of the foregoing has been furnished by Electronic Filing to Sheryl L. Loesch, Clerk of the Court, U.S. District Court, Middle District of Florida, located at U.S. Courthouse, 801 N. Florida Ave., #223, Tampa, FL 33602-3800, and that notification of this filing will be sent to all interested persons on this 17th day of July, 2014.

Respectfully submitted,

_____/s/ Jeffrey G. Brown_____
JEFFREY G. BROWN, ESQ.
Brown & Doherty, P.A.
450 Carillon Parkway, Suite 120
St. Petersburg, FL 33716
(727) 299-0099, Fax (727) 299-0044
FBN 832431
jeff@brownanddoherty.com